UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

_____

U.S. DISTRICT COURT NO. 10-cv-61271-KMM
U.S. BANKRUPTCY COURT NO.: 09-36566-JKO

_____

**MELVIN H. GALE, INDIVIDUALLY AND AS TRUSTEE OF THE MELVIN H. GALE
& LEONA GALE TRUST, AND THE PERSONAL REPRESENTATIVE OF THE
ESTATE OF STANLEY SPIELMAN,**

APPELLANTS,

VS.

**ROSS F. CHARNO** and
**AMANDA CHARNO**,

APPELLEES

_____

**RESPONSE BRIEF OF APPELLEES**

_____

SLATKIN & REYNOLDS, P.A.
One E. Broward Blvd., Suite 609
Fort Lauderdale, Florida 33301
Telephone: (954) 745-5880
Facsimile: (954) 745-5890
Attorneys for Appellees

/s/ Robert F. Reynolds___
Robert F. Reynolds, Esq.
Florida Bar No. 174823

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** ........................................................................... i

**TABLE OF AUTHORITIES** ..................................................................... 2

**STATEMENT OF JURISDICTION** ........................................................... 3

**STANDARD OF REVIEW** ........................................................................ 4

**STATEMENT OF ISSUES ON APPEAL** ................................................... 5

**STATEMENT REGARDING ORAL ARGUMENT** .................................... 5

A.    The Parties ....................................................................................... 6

B.    Nature of the Case ............................................................................ 6

C.    Statement of the Facts…………………………………………………..7

**SUMMARY OF THE ARGUMENT** ......................................................... **13**

**ARGUMENT** ........................................................................................... **14**

**The Bankruptcy Court Properly Exercised its Discretion and Denied the Appellants' Motions for Extension of Time Under FRBP 4004(b) and 4007(c) and Motion for Re-Hearing of Order Denying Extension For Time Under FRBP 4004(b) and 4007(c) or For Relief From Order Due to the Failure of the Appellants to Seek, Undertake or Request any Discovery Prior to the Expiration of the Time for the Filing of Objections.** ……..……………………………………………………14

**CONCLUSION** ...................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*In re Attenberry*, 194 B.R. 521 (D. Kan. 1996)………………………………………….21
*In re Ballas*, 342 B.R. 853 (Bankr. M.D. Fla. 2005),
*affd* 212 Fed. Appx. 867 (11th Cir. 2006)........................................................ 16, 17, 19, 20
*In re Coady*, 588 F.3d 1312, 1316 (11th Cir. 2009)………………………………………….4
*Cohen v. U.S.*, 191 B.R. 482 (S.D. Fla. 1995)…………………………………………….4
*In re Dekelata,* 149 B.R. 115 (Bankr. E.D. Mich. 1993)………………………………...18
*In re Evans Products Co.*, 60 B.R. 863 (S.D. Fla. 1986)…………………………………4
*In re Farhid,* 171 B.R. 94 (N.D. Cal. 1994)………………………………………………18
*In re Grillo,* 212 B.R. 744 (Bankr. E.D.N.Y. 1997) …………………………....17, 18, 19, 20
*In re Leary,* 185 B.R. 405 (Bankr. D. Mass. 1995)……………………………………….18
*Littell v. Littel (In re Littell),* 58 B.R. 937 (Bankr. S.D. Tex. 1986)……………………18
*In re Mendelsohn,* 202 B.R. 831 (Bankr. S.D.N.Y. 1996)………………………………..18
*In re Meyer,* 120 F.3d 66 (7th Cir. 1997)………………………………………………..21
*In re Nowinski,* 291 B.R. 302 (Bankr. S.D.N.Y. 2003)……………………………….19, 20
*In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883 (11th Cir. 1990)…………..4
*Santana Olmo v. Quinones Rivera (In re Quinones Rivera,* 184 B.R. 178
(D. P.R. 1995)……………………………………………………………………………18
*In re Sirmans*, 2009 U.S. Dist. LEXIS 47268 (E.D. Ca. 2009) ...................................... 20
*In re Woods*, 260 B.R. 41 (Bankr. N.D. Fla. 2001)…………………………………….19

**Statutes**

*11 U.S.C. § 101* …………………………………………………………………………..6
*11 U.S.C. § 341*…………………………………………………………………….15, 19
*11 U.S.C. § 523(a)* ……………………………………………………………………… 7
*11 U.S.C. § 523(c)*………………………………………………………………………15
*11 U.S.C. § 727(a)*……………………………………………………………………7, 15
*28 U.S.C. § 157* ………………………………………………………………………… 3
*28 U.S.C. § 158(a)*………………………………………………………………………3

**Rules**

*Bankruptcy Rule 2004*……………………………………………………8, 10, 16, 17, 18
*Bankruptcy Rule 4004(a)*………………………………………………………….14, 15
*Bankruptcy Rule 4004(b)*………………………...3, 4, 5, 6, 8, 9, 10, 12, 13, 14, 16, 17, 19, 21
*Bankruptcy Rule 4004(c)*………………………………………………………………18
*Bankruptcy Rule 4007(a)*………………………………………………………………15
*Bankruptcy Rule 4007(c)*………………………3, 4, 5, 6, 8, 9, 10, 12, 13, 14, 16, 17, 19, 21
*Bankruptcy Rule 8012*……………………………………………………………………5
*Bankruptcy Rule 8013*…………………………………………………………………...4
*Local Rule 87.2*………………………………………………………………………....3
*Local Rule 87.4(F)*……………………………………………………………………...5
*Local Rule 2004-1*………………………………………………………………………9

**Miscellaneous**

*Collier on Bankruptcy* P 4004.03[2] at 4004-13………………………………….…....18

## <u>STATEMENT OF JURISDICTION</u>

This is an appeal taken from the Bankruptcy Court's *Order Denying Motion of Creditor Melvin Gale, Individually and as Trustee, and Creditor Stanley Spielman for Extension of Time Under FRBP 4004(b) and 4007(c)* (the "*Denial Order*") and the Bankruptcy Court's *Order Denying Motion for Re-Hearing of Order Denying Extension of Time Under FRBP 4004(b) and 4007(c) or for Relief from Order* (the "*Rehearing Order*" and collectively the "*Appealed Orders*") entered by the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division (the "Bankruptcy Court"). The Bankruptcy Court entered the *Appealed Orders* on April 9, 2010 and May 24, 2010 and the Clerk entered the same on the docket on April 9, 2010 and May 24, 2010.  This Court's jurisdiction is predicated upon *28 U.S.C. §158(a)*, which provides that the District Court shall have jurisdiction to hear appeals from final judgment, orders and decrees of bankruptcy cases and proceedings referred to bankruptcy judges pursuant to 28 U.S.C. § 157.  In this District, all bankruptcy cases and proceedings are referred to the Bankruptcy Court pursuant to Local Rule 87.2 and the General Order of Reference entered July 11, 1984.

## STANDARD OF REVIEW

The Standard of Review in this case is generally governed by Federal Rule of Bankruptcy Procedure 8013, which provides:

> On an appeal the District Court or Bankruptcy Appellate Panel may affirm, modify, or reverse a Bankruptcy Judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses.

Fed.R.Bankr.P. 8013; *See also*, *In re Downtown Properties, Ltd*., 794 F.2d 647 (11th Cir. 1986).

Decisions of the Bankruptcy Court on motions for extensions of time to object to discharge and/or dischargability are reviewed for abuse of discretion. *In re Coady*, 588 F.3d 1312, 1316 (11th Cir. 2009).

Conclusions of law, mixed findings of law and fact and conclusions regarding the legal significance applicable to the facts are reviewed *de novo*. *In re Evans Products Co*., 60 B.R. 863 (S.D. Fla. 1986); *Cohen v. U.S.*, 191 B.R. 482 (S.D. Fla. 1995). Whereas, the equitable determinations by the Bankruptcy Court are subject to review under an abuse of discretion standard. *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883 (11th Cir. 1990).

## STATEMENT OF ISSUES ON APPEAL

Whether the Bankruptcy Court properly exercised its discretion and denied the Appellants' Motions for Extension of Time Under FRBP 4004(b) and 4007(c) and Motion for Re-Hearing of Order Denying Extension For Time Under FRBP 4004(b) and 4007(c) or For Relief From Order?

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Bankr. Rule 8012 and Southern District of Fla. Local Rule 87.4(F), the Appellees believe that oral argument is not necessary in this appeal, as the one basic issue, whether or not the Bankruptcy Court properly denied the Appellants' Motions referenced above, is sufficiently developed in the record below that the Appellees believe the matter can be decided on the briefs and the record before the Court.  Of course, if the Court determines that oral argument is necessary, the Appellees would appreciate the opportunity to present their positions and arguments to the Court.

## STATEMENT OF THE CASE AND FACTS

### A.     The Parties

Throughout this Brief, the Appellants, Melvin H. Gale, Individually and as Trustee of the Melvin H. Gale and Leona Gale Trust and as the Personal Representative of the Estate of Stanley Spielman will be referred to as the "Appellants." When referred to singularly, Melvin H. Gale, both Individually and as Trustee of the Melvin H. Gale and Leona Gale Trust, will be referred to as "Gale" and Stanley Spielman, as well as the Estate of Stanely Spielman, will be referred to as "Spielman."  Appellees Ross F. Charno and Amanda Charno will be referred to collectively as the "Debtors."  When referred to singularly, Ross F. Charno will be referred to as "Mr. Charno" and Amanda Charno will be referred to as "Mrs. Charno."

### B.     Nature of the Case

This appeal arises from the Bankruptcy Court's: 1) *Order Denying Motion of Creditor Melvin Gale, Individually and as Trustee, and Creditor Stanley Spielman for Extension of Time Under FRBP 4004(b) and 4007(c)*; and 2) *Order Denying Motion for Re-Hearing of Order Denying Extension of Time Under FRBP 4004(b) and 4007(c) or for Relief from Order* entered by the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division (the "Bankruptcy Court"). The Bankruptcy Court entered the *Appealed Orders* April 9, 2010 and May 24, 2010 and the Clerk entered both on the docket on April 9, 2010 and May 24, 2010.

C.     <u>Statement of the Facts</u>[1]

The Debtors filed their voluntary petitions for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on December 1, 2009. R.1[2]. On December 9, 2009 the Creditors filed an Emergency Motion for Stay Relief (the "Stay Relief Motion"). R.11. Attached to the Stay Relief Motion was the Creditors' Amended Complaint that had been filed in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida (the "Circuit Court Action"). R.11 Exhibit. According to the Certificate of Service contained on page 62 of the Amended Complaint, it was served on December 27, 2007. R.11 Exhibit p. 62. From a review of same, the Amended Complaint contained 354 paragraphs and no less than two counts alleging fraud, two counts alleging civil theft, two counts alleging conversion, two counts alleging civil remedies for violations of Florida's Criminal Practices Act and various and sundry other claims. R.11 Exhibit.

In the Stay Relief Motion, the Appellants alleged "That the state court matter was prepared for trial and ready to be set onto the Circuit Court's trial docket when the Debtors filed this Petition." R.11 ¶4. The Appellants further alleged "The very same issues to be tried in state court would come before this Court on claim resolution or as part of an adversary proceeding seeking relief under 11 U.S.C. § 523(a). Debtor is not in need of any reorganization and is not entitled to a discharge under 11 U.S.C. § 727(a)." R.11 ¶10.

---

[1] As an initial matter, the Debtors note that the Appellants' Brief contains numerous statements of fact that are either not supported in the record on appeal, regardless of whether the Court grants the Appellants' motion to supplement the record, are completely irrelevant or are outside the scope of this appeal. In addition, the Brief contains several misstatements of fact. For example, in their Initial Brief the Appellants argue at length that a bankruptcy case filed by Miriam Charno nearly two years before the Debtors filed their case is somehow relevant. The Appellants also spend an inordinate amount of time discussing Charno's Custom Rides, Inc., which is not a party to any of the proceedings in either the state court or the Bankruptcy Court. Had the Appellants wanted to inquire about Charno's Custom Rides, Inc. in the Bankruptcy Court, they should have sought discovery on the issue.

The Debtors would request the Court disregard all unsupported and irrelevant statements. The Debtors have attempted to set forth herein the correct version of the facts in the Bankruptcy Court with appropriate cites to the record.

[2] Citations to the record below will be in the format "R.___." If a citation is to a hearing transcript, the page and line numbers will follow. If to a particular paragraph in a motion or response, the paragraph number will likewise follow.

The Bankruptcy Court noticed the Stay Relief Motion for hearing on December 15, 2009.

R.14.  At the hearing on the Stay Relief Motion, counsel for the Appellants stated the following:

> Now, your Honor, the case is on a trial docket.  It's been on a trial docket for a calendar call on December 16th, since long before November 11th, but on November 11th and then on December 1st, the debtors filed these Voluntary Petitions, and, in effect, the stay runs the risk of bumping us off that December 16th calendar call for a jury trial scheduled beginning the week of January 4, hence our request for an emergency hearing.
>
> * * *
>
> MR. SCHROEDER:  Just a reminder, Judge, this case is -- with respect to the Charnos, they are going to either consent to the entry of a judgment on a 523 or fight it or they are going to consent to the entry of a judgment in circuit court or fight it.
> THE COURT:  Well, Mr. Schroeder, what good does getting a judgment in circuit court do for you? Because the only place where the issue of dischargeability can be determined on this kind of obligation is here.
> MR. SCHROEDER:  Understood, Judge.  However if you can lift the stay for the purpose of the factual finding in state court and adopt that as the factual finding with respect to the fraud, the (a)(2), (a)(4), or (a)(6) issues, you could adopt that in abstention.  The idea is this, the plaintiff is going to have to prove the allegations of fraud.  There's also cost here involved.  The plaintiff has already teed it up in state court, and now they have to gear down and gear up in this court, literally transferring the game that's already been scheduled, and the tickets sold, to another field.  It's still the same game, Judge.

R.87 page 5, lines 25-25, p.6, lines 1-7, page 21, lines 15-25 and page 22, lines 1-12.  The Debtors opposed the Stay Relief Motion, See generally R.87, and the Bankruptcy Court ultimately denied the Stay Relief Motion.  R.18.  At the conclusion of the hearing the Bankruptcy Judge stated "I invite Mr. Schroeder to file whatever actions he believes are appropriate or his clients believe are appropriate."  R.87 page 28, lines 2-4.

The Debtors filed their Schedules in this case on December 31, 2009, which was approximately one week before the first meeting of creditors in the bankruptcy case and more than two months before the deadline to object to the Debtors' discharge or the dischargability of a particular debt.  R.25. The Debtors filed an Amended Summary of Schedules and an Amended Schedule B (Personal Property) on January 22, 2010. R.34. The Amended Schedule B added approximately $1,805.00 in value to the Debtors' personal property, but otherwise did not change the Debtors' initial filings.  R.34.  Moreover, and contrary to Appellants' assertions that

the Debtors had "liquid" assets of $216,823.08, a review of Schedules B and D filed with the original Schedules and Summary of Schedules demonstrates that the vast majority of the $216,823.08 in personal property consists of vehicles used in Mr. Charno's business.  R.25 p.7. These vehicles were all encumbered with liens far in excess of their value, and thus had no equity whatsoever.  R.25 p.11-14.

Notwithstanding their rush into court to seek stay relief, a review of the record indicates that, after the Stay Relief Motion was denied, and after the Debtors filed both their Schedules/Statement of Financial Affairs and the Amended Schedule B, the Appellants failed completely to initiate any discovery and took no action whatsoever in the Bankruptcy Court, other than filing a Notice of Appearance.  R.31.  Indeed, as the Debtors stated in their Response in Opposition to Motion of Creditor Melvin Gale, Individually and as Trustee, and Creditor Stanley Spielman for Extension of Time Under FRBP 4004(b) and 4007(c) (the "First Response"), the Appellants did not request or notice an examination under Bankr. R. 2004 and Local Rule 2004-1, did not request any documents, and did not contact the Debtors' counsel at all in order to either coordinate or undertake any discovery in the bankruptcy case.  R.74 ¶8.

The first action the Appellants took in the Bankruptcy Court after filing their Notice of Appearance was to file the Motion for Extension of Time Under FRBP 4004(b) and 4007(c) (the "Motion for Extension"), which was filed on March 8, 2010, the last day for creditors and interested parties to either file objections to discharge/dischargability or seek an extension of the deadlines.  R.58.  Notwithstanding their statements and representations in the Stay Relief Motion that they did not want to lose their looming trial date and their statements at the hearing that they were ready for trial, in the Motion for Extension the Appellants stated, without any specificity, that "The documentation of the creditor-debtor relationship is voluminous" and "That Creditors need more time to complete discovery in this matter and to acquire and analyze Debtors' documentation."  R.58 ¶ 3-4.  As the record reflects, this was the first indication the Appellants ever gave that they needed additional discovery.

On March 8, the Trustee in the Debtors' bankruptcy case also filed a motion for extension of time to object to the Debtors' discharge and to the Debtors' claimed exemptions.  R.60.  That motion was granted by order dated March 11, 2010.  The order was specific to the Trustee and explicitly stated "The Trustee shall have up through and including Friday, May 7, 2010, in which to file an objection to the Debtors' . . . discharge."  R.63 ¶2.  As explained at a later hearing, the

Debtors did not oppose this extension because the Trustee, unlike the Appellants, had attempted to undertake some discovery and had requested the Debtors appear for an examination under Bankr. R. 2004 prior to the expiration of the deadline to object.  Because the examination could not be scheduled on a mutually agreeable date prior to the deadline, the Debtors agreed to the extension.  R.120 p. 18 lines 2-25, p. 19 lines 1-25 and p. 20 lines 1-4.  Likewise, the United States Trustee also obtained an extension that was specifically limited to the right of the United States Trustee to object to the Debtors' discharge.  R.93 ¶2 ("The deadline for the United States Trustee to file an objection to the Debtors' discharge shall be extended through and including April 30, 2010.").

On April 2, 2010 the Debtors filed their Response in Opposition to Motion of Creditor Melvin Gale, Individually and as Trustee, and Creditor Stanley Spielman for Extension of Time Under FRBP 4004(b) and 4007(c) (the "First Response") (R.74).  In the First Response, the Debtors specifically pointed out that, notwithstanding that the Appellants represented that they were ready to go to trial on the very issues they now stated they needed to undertake discovery,

> [N]ot one request for production was made, not one Notice of Rule 2004 Examination was filed, and not one phone call was made or email sent in order to attempt to schedule an examination pursuant to[Bankruptcy] Rule 2004.  In short, the Creditors did nothing in the time frames set forth in [Bankruptcy] Rules 4004 or 4007 in order to move their case forward.

R.74 ¶ 8.  The Debtors then argued that, under the case law determining what constituted "cause" for the granting of an extension under either Bankruptcy Rules 4004(b) or 4007(c) and the policies underlying the time constraints in those rules, the lack of diligence in undertaking discovery was fatal to the Appellants' request.  R.74 ¶ 9-13.

The Bankruptcy Court held a hearing on the Motion for Extension on April 6.  R.73 and R.118.  Counsel for the Appellants did not appear.  See R.118 generally.  Having noted the lack of appearance, the Debtors proffered the testimony of their counsel that the Appellants had done no discovery or taken any other action on their alleged claims:

> THE COURT:  You make a very compelling argument that if you're going to seek an extension of time to file a complaint objecting to discharge or to dischargeability, you've got to be at least diligent to some degree.  The facts that you lay out, assuming them to be true, are that these prospective plaintiffs have done absolutely nothing.

MR. REYNOLDS:  Your Honor, I spoke to Mr. Singh[3] before I filed the motion. He's shaking his head.  I don't believe he was contacted either for any sort of discovery or any request to set a 2004 Exam.  They did not contact us.  If they didn't contact us, they certainly can't say that we weren't cooperative.

* * *

(By Mr. Reynolds) They haven't done anything in this case, Judge.  It's even more striking that they came before Your Honor -- I did get the transcript, Judge, but it hasn't been filed with the Court.  I did bring an extra copy.  Their pre-trial was December 15th, and their trial calendar was January 4th.  They came before Your Honor and said, "We're ready to go forward on our fraud claims in state court," and now they're asking for more time.

THE COURT:  It doesn't make any sense.

* * *

(By Mr. Reynolds) We certainly rest on our papers, and the representations of Mr. Singh and I.  I would proffer that as testimony if need be from both of us, and we ask the motion be denied.

THE COURT:  I will deny the motion . . .Because there was a complete absence of diligence undertaken by a creditor who represented that it was ready to try the fraud case in state court in December, there is no showing of entitlement to an extension of time.  I would, in any event, deny the motion for lack of prosecution, but substantively, it will be denied because the creditor has made no showing whatever of entitlement to the relief requested.

R.118. p. 4, lines 4-17, page 5, lines 6-17 and page 6, lines 3-7 and 10-18.  The Court entered the *Denial Order* on April 9, 2010. R.81.

On April 19, 2010 the Appellants filed the Motion for Rehearing.  R.92.  The Motion for Rehearing contained several paragraphs alleging reasons for missing the hearing on April 6, as well as other reasons, alleging that additional time was needed either for the Appellants' bankruptcy counsel to familiarize himself with the underlying case or to determine if additional discovery was needed.  However, importantly, the Motion for Rehearing did not contain any denials of the Debtors' statements that no discovery had been conducted in the Bankruptcy Court, and further did not contain any allegations that the Appellants had attempted to initiate or undertake any discovery in the bankruptcy case.  See R.92 generally.

---

[3]  Manny Singh, Esq. filed the Debtors' Bankruptcy Petition.  The undersigned was only retained to litigate the issues with the Appellants.

The Debtors filed a response in opposition to the Motion for Rehearing on May 14, 2010. R.109. The Debtors incorporated all of the arguments they had raised in their response to the Motion for Extension, R.74, as well as making additional arguments that supported their position that the Appellants had failed to exercise appropriate diligence in undertaking discovery or filing their actions. See R.109 generally.

The Bankruptcy Court conducted a hearing on the Motion for Rehearing on May 18, 2010. R.120. Again, the Appellants did not state that they had ever sought to initiate or undertake any discovery in the bankruptcy case. Rather, they argued that the equities weighed in their favor and that they needed additional time to review the documentation they already had—a direct contradiction to the statement in the Motion for Extension that they needed additional discovery. R.120 p.8, lines 6-25, p.9 lines 1-25 and p.10 lines 1-2.

In response, the Debtors argued that, even if the Court were to accept the representations of counsel for the Appellants that the denial for failure to attend the hearing should be set aside due to excusable neglect, the Appellants nonetheless failed to provide anything new or different that would cause the Bankruptcy Court's previous decision to be subject to being vacated and/or set aside:

> [The] factors were whether the debtor refused in bad faith to cooperate with the creditor. That didn't happen here. They didn't ask for any discovery. Whether the creditor had sufficient notice of the deadline and the information to file an objection. Well, they knew about the bankruptcy on the day it was filed, so they clearly knew about all of the deadlines. . . .Whether the creditor exercised diligence and the complexity of the case. . . ."Whether the creditor exercised diligence with respect to discovery is of most importance as many Courts now require the creditor to establish at least a reasonable degree of due diligence to be accorded the requested extension." They didn't need any discovery. They said so. We are ready for trial. So they didn't do anything, Judge. And all they had to do was come here and file a complaint.

R.120 p.16 lines 3-22. Additionally, the Debtors argued that bankruptcy policy, and specifically the policies underlying the strict time limits of Bankruptcy Rules 4004(b) and 4007(c), turned the equities in favor of the Debtors. R.120 p. 17 lines 10-21.

After considering the arguments, the Bankruptcy Court denied the Motion for rehearing and, on May 24, 2010, entered the *Rehearing Order*. R.124.

This appeal followed.

## <u>SUMMARY OF ARGUMENT</u>

Bankr.R. 4004(b) and 4007(c) authorize the Bankruptcy Court to grant an extension to creditors of the deadlines to object to the debtor's discharge or dischargeability of a particular debt "for cause shown." Aalthough the term "cause" is not defined in the Bankruptcy Code or Bankruptcy Rules, it is almost universal that Courts interpreting the provision in both rules have held that, in order to obtain an extension under the rules, a creditor must demonstrate diligence in prosecuting its action, whether that be obtaining discovery, attempting to obtain discovery, or actually obtaining discovery. In the instant matter, after running into Court on an emergency basis and stating that they did not need any additional discovery, the Appellants failed to take any action for almost three months prior to the deadline to file complaints objecting to the discharge and/or dischargeability. Rather, the Appellants, at the 11th hour, sought an extension of the deadline.  Under the case law interpreting the meaning of "cause" in the applicable rules, this was inappropriate.  The Appellants' lack of diligence in initiating or conducting any discovery, or even attempting to coordinate same, is fatal to their request for an extension, and none of the excuses they offer, such as the Debtors' alleged failure to cooperate with prior discovery in state court, overrides the Appellants' failure to take any discovery whatsoever in the bankruptcy case. Accordingly, the *Appealed Orders* should be affirmed in their entirety.

## ARGUMENT

**The Bankruptcy Court Properly Exercised its Discretion and Denied the Appellants' Motions for Extension of Time Under FRBP 4004(b) and 4007(c) and Motion for Re-Hearing of Order Denying Extension For Time Under FRBP 4004(b) and 4007(c) or For Relief From Order Due to the Failure of the Appellants to Seek, Undertake or Request any Discovery Prior to the Expiration of the Time for the Filing of Objections.**

The Appellants spend a great amount of time arguing in their Initial Brief that they established cause for an extension of the deadlines set forth in Bankruptcy Rules 4004(b) and 4007(c) because they needed additional discovery in order to be able to file their adversary proceeding. This argument misses the point on several aspects. First, the Appellants never explained to the Bankruptcy Court what discovery they needed. Second, the Appellants' representations at the last minute that they needed additional discovery were absolutely and completely contradictory to their assertions in their Stay Relief Motion—which they filed and sought a hearing for on an emergency basis—that they needed no additional discovery.

Neither of the above points, however, would have saved the Appellants even if the Appellants could have provided any reasonable explanation. This is because the Appellants cannot explain the most glaring and important issue of their case—the fact that the Appellants utterly and completely failed to request, initiate or undertake any discovery in the Bankruptcy Court prior to the expiration of the deadlines set to object to the Debtors' discharge or the dischargability of the Appellants' debt. Given that the Appellants knew from as early as December 15, 2009, when the Stay Relief Motion was denied, that they would be required to file an adversary proceeding in the Bankruptcy Court, their complete failure to take any steps to request any discovery or to conduct any discovery at all was fatal to their last-minute request for an extension. Moreover, the Appellants' arguments that the Debtors' alleged failure to cooperate with discovery in the related state court case does not explain why they sat on their rights and took no action in the Bankruptcy Court during the almost three months from the denial of the Stay Relief Motion until the deadline to file objections arrived. The Bankruptcy Court thus did not abuse its discretion in denying the Appellants last- minute request and its decision should be affirmed in its entirety.

The Appellants sought extensions of the deadlines to object to the Debtors' discharge, as well as the dischargeability of their alleged debts from the Debtors, pursuant to Bankr.R. 4004(a), 4004(b) and 4007(c). Those rules read in relevant part:

> Rule 4004  Grant or Denial of Discharge.
> (a) Time for filing claim objection to discharge; notice of time fixed. In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the code shall be filed not later than 60 days following the first date set for the meeting of creditors under § 341(a).
>
> (b) Extension of time. On a motion of any party in interest, after hearing on notice, the court may extend **for cause** the time for filing a complaint objecting to discharge.  The motion shall be filed before the time is expired.

(Emphasis added.)  Rule 4007, which applies to the determination of a dischargeability of a particular debt, reads as follows:

> Rule 4007  Determination of Dischargeability of a Debt.
> (a) Persons entitled to file complaint.  A debtor or any creditor may file a complaint to obtain a determination of a dischargeability of any debt.
>
> ***
>
> (c) Time for filing complaint under § 523(c) in a chapter 7 liquidation…
> A complaint to determine a dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)…on motion of a party in interest, after hearing on notice, the court may **for cause** extend the time fixed under the subdivision.  The motion shall be made before the time is expired. (Emphasis added.)

In the instant case, the deadline for filing complaints under either of the above Rules was March 8, 2010.  Likewise, motions for an extension of time under the Rules set forth above were also due on or before March 8, 2010.

While both Rules state that the court may extend the time "for cause," nowhere in either rule, or anywhere else in the Bankruptcy Code, is there any definition of the term "cause." However, courts that have interpreted the provision in both rules have almost universally held that, in order to support a request for an extension for "cause," the creditor or interested party has to demonstrate it has been diligent in attempting to prosecute its claim and has undertaken some discovery in order to obtain the information necessary to determine whether or not they have any basis for filing an action to either object to the debtor's discharge or to the dischargeability of a particular debt.  As noted above, the Appellants wholly and completely failed to undertake any such action in this case.  Accordingly, the Bankruptcy Court did not err in denying their requested relief.

In its papers filed in the Bankruptcy Court, The Debtors primarily relied on *In re Ballas*, 342 B.R. 853 (Bankr. M.D. Fla. 2005), *aff'd* 212 Fed. Appx. 867 (11th Cir. 2006). In *Ballas* the creditor, much like the Appellants here, did not conduct any discovery in the underlying bankruptcy case. Similar to Appellants here however, the creditors in *Ballas* had conducted discovery in a related case. The creditors in *Ballas* argued their discovery efforts in the other case, as well as the complexities of the case, warranted an extension of the deadlines under Bankr. R. 4004(b) and 4007(c).

The *Ballas* court first set forth several factors that it deemed applicable in determining whether or not an extension was warranted:

> "Cause" is not defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure; therefore, the determination is committed to the Court's discretion. Courts have addressed factors helpful in the determination of cause: (1) whether the debtor refused in bad faith to cooperate with the creditor; (2) whether the creditor had sufficient notice of the deadline and the information to file an objection; (3) the possibility that the proceedings pending in another forum will result in collateral estoppel on the relevant issues; (4) whether the creditor exercised diligence; and (5) the complexity of the case. **Whether the creditor exercised diligence with respect to discovery is of most importance, as many courts now require the creditor to establish at least a reasonable degree of due diligence to be accorded the requested extension.**

*Id.* at 856 (emphasis added) (citations omitted). The *Ballas* court then rejected all of the creditor's arguments primarily because the creditors had failed to undertake any discovery in the pending bankruptcy case:

> In applying the aforementioned factors to the present case, the Leggs first argue that the Debtor failed to cooperate with their discovery efforts in his case as well as the Brammeier case, and as a result of such protraction, the Leggs should be entitled to an extension of time to file a complaint objecting to discharge and/or dischargeability. The Court finds this argument unpersuasive. First, prior to the Motion for a Rule 2004 Examination of the Debtor on March 19, 2005, the Leggs did not initiate any discovery in the instant case. Thus, in the Debtor's case, there was no discovery to delay. . . . Further, assuming *arguendo* that the Debtor did in fact delay the Leggs' discovery in the Brammeier bankruptcy, the Debtor's failure to be forthcoming in the Brammeier case does not establish cause to extend the time to object to discharge and/or dischargeability in the present case, given the fact that no discovery in the present case had been initiated prior to the Motion to Extend.

\* \* \*

Further, the Leggs contend that the complexities of the case, specifically the process of unraveling and unwinding the financial transactions of the Debtor, Brammeier and DSS, the subject of which forms the basis of their potential complaints, warrant an extension of time. The Court acknowledges the interrelationship of the Debtor's case and the Brammeier case, as well as the numerous issues involved. **However, the entanglement of the parties and the intricacy of the issues do not camouflage the Leggs' neglect to pursue discovery in the instant case.** Given the complexity involved, if the Leggs had engaged in a minimal amount of discovery antecedent to the Motion to Extend, an extension of time may have been appropriate.

*Id.* at 856-857 (emphasis added).  The *Ballas* court ultimately denied the requested extension based on the creditors' failure to undertake any discovery in the pending bankruptcy case.

In its decision affirming the bankruptcy and district courts in *Ballas*, and thus approving the ruling in same, the Eleventh Circuit stated that "The bankruptcy court found that the Leggs had not exercised sufficient due diligence to demonstrate cause for the requested extension. We find no abuse of discretion in that holding."  *In re Ballas*, 212 Fed. Appx. 867, 868 (11th Cir. 2006).

The facts in *Ballas* are strikingly similar to the instant case.  The most striking similarity is the fact that the Appellants, like the creditors in *Ballas*, failed to undertake any discovery in the instant case.  The Appellants, after changing directions from their emergency filing and stating they needed discovery, claimed that there were issues with obtaining discovery in the related state court case.  However, there were no issues in the Bankruptcy Court because the Appellants never undertook any discovery to begin with.  The Appellants have likewise argued, albeit tardily, that the Debtors have not cooperated in discovery in the related state court case, as did the creditors in *Ballas*.  Again, the Appellants have not, however, explained why they completely failed to attempt to undertake any discovery in the Debtors' case, and specifically use the much broader scope of Bankruptcy Rule 2004 in attempting to take discovery.  As the court in *Ballas* stated, the fact that discovery in a related case was stymied does not overcome the complete lack of effort to take discovery in the debtor's bankruptcy case.  Finally, the Appellants also argued to the Bankruptcy Court that the relationship between the parties was complex, as did the creditors in *Ballas*.  Again, the *Ballas* court rejected this argument based on the fact that the creditors failed to take any discovery, just as the Appellants failed to take any discovery in this case.

Although the Debtors relied primarily on *Ballas* before the Bankruptcy Court, *Ballas* is far from the only case that holds that the failure to conduct or undertake any discovery is fatal to a last-minute request for an extension of the deadlines set forth in Bankr. R. 4004(b) and 4007(c). Rather, nearly every court that has determined the issue on similar facts—a last-minute request for an extension when no discovery was undertaken—has held that the creditor did not show cause sufficient to warrant an extension of the deadlines. In *In re Grillo*, 212 B.R. 744 (Bankr. E.D.N.Y. 1997) the bankruptcy court considered a motion, like Appellants' motion made on the last day, seeking an extension of the discharge and dischargeability deadlines. Like the Appellants, the creditors in *Grillo* had failed to conduct any discovery in the time leading up to the deadline, and only sought to schedule an examination pursuant to Bankr.R. 2004 five days prior to the expiration of the relevant deadlines.

The *Grillo* court first discussed the importance of the deadline to the overall bankruptcy structure and policy of granting a debtor a "fresh start" in an expeditious manner:

> Fed. R. Bankr. P. 4004(c) provides that "on expiration of the time fixed for filing a complaint objecting to discharge . . . the court shall *forthwith* grant the discharge . . . ." "This requirement is designed to bring about an expeditious discharge in chapter 7 cases and a prompt fresh start for the debtor. . . ." As a general matter, the deadlines provided for in the Federal Bankruptcy Rules "are to be interpreted strictly and in a manner consistent with the Code's policies in favor of providing a fresh start for the debtor and prompt administration of the case."

*Id.* at 746 (emphasis in original) (citations omitted). The court then reviewed the efforts—or rather, the lack of effort—that the creditor in *Grillo* undertook in conjunction with its analysis of numerous cases discussing the "cause" requirement:

> Other than a "recent" acquisition of certain documents . . . PBC has failed to provide  the court with any indication of its effort to obtain information to posit an objection to the Debtor's discharge prior to July 7, 1997, the last date to file such objections. **The majority view is that there can be no cause justifying an extension of time to object to discharge where the party seeking the extension failed to diligently pursue discovery prior to expiration of the deadline.** See *In re Farhid,* 171 B.R. 94, 97 (N.D. Cal. 1994) (cause absent where creditor failed to attend section 341 meeting of creditors or request any Rule 2004 examination); *In re Mendelsohn,* 202 B.R. 831, 832 (Bankr. S.D.N.Y. 1996) (no cause where creditor failed to seek a Rule 2004 examination and moved for an extension of time on last day to file objections to discharge); *In re Leary,* 185 B.R. 405, 406 (Bankr. D. Mass. 1995) (cause absent where creditor waited until ten (10) days prior to expiration of the deadline to pursue requested Rule 2004 examinations); [**8]  *In re Dekelata,* 149 B.R. 115, 117 (Bankr. E.D. Mich. 1993) (no cause

> where request for Rule 2004 examination was made for the first time 11 days prior to expiration of the deadline); *Littell v. Littel (In re Littell),* 58 B.R. 937, 938 (Bankr. S.D. Tex. 1986) (no cause where creditor failed to conduct discovery and motion for extension of time was filed day before deadline was to expire); see also *Santana Olmo v. Quinones Rivera (In re Quinones Rivera),* 184 B.R. 178, 183 (D. P.R. 1995) (request for extension is inappropriate where movant made "no attempts at discovery, until his motion for extension of the deadline for objecting to discharge . . . ."); 9 *Collier on Bankruptcy* P 4004.03[2] at 4004-13 (extension inappropriate where "party seeking extension has made no attempts at discovery during all or most of the time available to it.").

*Id.* at 746-47 (citations in original) (emphasis added).  The *Grillo* court then denied the requested extension based on the fact that the creditor "[S]at on its rights during the entire 60 day period following the date first set for the § 341 meeting of creditors" and because "the record is devoid of even a hint of efforts to obtain information by PBC.  Such inaction may not be rewarded with an extension of time to file objections to discharge and certainly fails to satisfy the cause requirement of Fed. R. Bankr. P. 4004(b)."  *Id.* at 747.

Other courts have applied the reasoning in *Grillo* with approval.  In *In re Woods*, 260 B.R. 41 (Bankr. N.D. Fla. 2001) the bankruptcy court had before it another last-minute request for an extension with no action taken before the deadline.  The court cited *Grillo* and the cases cited in *Grillo* and denied the request, stating that "A review of cases from around the country shows that a lack of diligent effort by a creditor can be fatal to a creditor's last minute attempt to achieve an extension of the deadline."  *Woods*, 260 B.R. at 45 (citation omitted).  Likewise, in *In re Nowinski*, 291 B.R. 302 (Bankr. S.D.N.Y. 2003) the court, citing *Grillo* and *Woods* with approval, found that the creditor's failure to undertake any discovery in the time period prior to the expiration of the Rule 4004(b) and 4007(c) deadlines was fatal to the creditor's request.  The *Nowinski* case, like the instant case, was a dispute between a creditor who claimed that the debtor had not been responsive to its prepetition discovery and that then failed to undertake any discovery in the bankruptcy case.  The court disposed of the creditor's request in similar fashion as the *Grillo*, *Woods* and *Ballas* courts disposed of their cases:

> Knowledge of the deadline coupled with the failure to diligently seek discovery is, absent unusual circumstances, fatal to an extension motion . . . Given Wells Fargo's lack of diligence during the ninety days between its notice of appearance and its motion for an extension, its claims that the case is complex or that Nowinski failed to cooperate are unpersuasive. . . . Wells Fargo has not charged Nowinski or his bankruptcy counsel with lack of cooperation. Nor could it since it never asked for any information during the bankruptcy case prior to the deadline

for objections. Accordingly, its motion for an extension of time to object to Nowinski's discharge is denied.

*Nowinski*, 291 B.R. at 306-307 (citations omitted).

Cases such as the instant matter have likewise been affirmed after appeal to the district court.  In *In re Sirmans*, 2009 U.S. Dist. LEXIS 47268 (E.D. Ca. 2009) the district court considered an appeal of the bankruptcy court's denial of a motion for an extension under Rules 4004(b) and 4007(c).   The bankruptcy court in *Sirmans* denied the requested extension notwithstanding the creditor's arguments that the debtor had been uncooperative in discovery in a prior state court case.   The court reviewed the case law and determined that the bankruptcy court had not erred in denying the requested extension:

> Here, the Bankruptcy Court weighed similar considerations. It acknowledged that the appellant had experienced difficulty in state court in obtaining discovery from the debtor, but concluded that this did not justify appellant's failure to pursue any discovery whatsoever in the bankruptcy case or to file a complaint based upon information appellant already had. . . .The court observed that there was no evidence that the debtor was unresponsive to discovery requests in the bankruptcy case and that "quite frankly, a lot of people who file bankruptcy have not been the most forthcoming in state court because they can't afford to litigate in state court. . . ."

*Id.* at *8.

The decisions in *Nowinski* and *Sirmans*, much like the decision in *Ballas*, also demonstrate that Appellants' tardily made argument that the Debtors' alleged failure to cooperate in discovery in the state court proceedings prior to the filing of bankruptcy does not override the Appellants' failure to conduct any discovery in the bankruptcy case.  The Appellants spend much of their brief arguing this point.  However, in *Nowinski, Sirmans* and *Ballas*, the creditors alleged much of the same—that the debtor had engaged in delay tactics, had been nonresponsive to discovery, or had otherwise attempted to obstruct discovery.  Yet, amazingly, in all three cases, as in the instant case, the creditors did absolutely nothing in the bankruptcy case to attempt to obtain discovery.  Not surprisingly, in all three cases, as in the instant case, the requested extensions were properly denied based on the utter and complete lack of diligence in the bankruptcy case.

The Appellants also attempt to argue that circumstances somehow changed once the Debtors filed their schedules.   Yet, the Appellants had the Debtors' schedules and other

documents on December 31, 2009, R.25, and—unlike the Trustee, who received the schedules on the same date and then requested discovery—the Appellants still did nothing prior to March 8, 2010.  The Debtors' amended schedules filed on January 22, 2010 did little to change the pertinent information that was provided in the initial filing.  Thus, any argument that the circumstances changed—an argument that was never presented to the Bankruptcy Court—simply rings hollow.

All of the above cited cases have similar facts to the instant case.  In each case, a creditor failed to undertake any discovery in the underlying bankruptcy case notwithstanding that they all had ample time to conduct discovery and had knowledge of the bar date for raising discharge/dischargability claims.  All chose to file last-minute motions seeking extensions of the deadlines instead of either filing their complaints or seeking discovery.  In each case, as the Bankruptcy Court did in the instant case, the courts held that the creditors' failure to exercise any diligence and undertake any discovery precluded the creditors from demonstrating "cause" for an extension and was thus fatal to the requested extensions.

Importantly, the interpretation of "cause" in all of the above cases supports the overall bankruptcy policy of granting a debtor a "fresh start" and expeditiously concluding a debtor's time in bankruptcy.  Courts have noted that the time deadlines in Rules 4004(b) and 4007(c) "[G]uarantees a debtor a real fresh start.  It defines a time certain when creditors may no longer come claiming that the debtor defrauded them and that certain debts should be nondischargeable. After the 60 days are over, all the demands for non-discharge that can be made, have been made. The debtor can relax."  *In re Meyer*, 120 F.3d 66, 68 (7th Cir. 1997).  Likewise, in *In re Attenberry*, 194 B.R. 521 (D. Kan. 1996), the court noted the importance of the fresh start policy in bankruptcy:

> Fundamental to our insolvency laws is the notion that bankruptcy in the life of an individual is a passing phenomenon, after which life must go on.  The viability and rapidity of that process is the essence of the discharge in bankruptcy and related fresh start doctrine.  Bankruptcy Rules 4004(a),(b), 4007(c) and 9006(b)(3) are the means utilized to achieve that objective. **They reflect a considered determination that a final cut-off date insuring that debtors will be free after a date certain, outweighs individual hardship to creditors that may be caused by rigid adherence to the rules.**

*Attenberry*, 194 B.R. at 525 (emphasis added) (citation omitted).

Given the bankruptcy policies regarding the prompt disposition of disputes relating to the debtor's discharge and the underlying "fresh start" policy that is the cornerstone of bankruptcy law, the cases cited herein have properly determined that "cause" for an extension of the deadlines requires diligence in investigating and prosecuting claims and that waiting to the last minute to seek an extension when the creditor has done nothing does not constitute "cause" for an extension.  The Bankruptcy Court in the instant case applied the same logic and reasoning that is well supported in the case law and the policies underlying the Bankruptcy Code, and its decision should be affirmed in all respects.

## CONCLUSION

For the foregoing reasons, the Debtors/Appellees, Ross and Amanda Charno, respectfully request the Court AFFIRM the orders of the Bankruptcy Court in all respects as well as grant any further relief the Court deems proper under the circumstances.

Dated this 23rd day of August, 2010.

> **SLATKIN & REYNOLDS, P.A.**
> Co-Counsel for the Appellees
> One East Broward Boulevard, Suite 609
> Fort Lauderdale, Florida 33301
> Telephone 954.745.5880
> Facsimile 954.745.5890
> rreynolds@slatkinreynolds.com
>
>
> By: /s/Robert F. Reynolds_____
>      ROBERT F. REYNOLDS
>      Fla. Bar No. 174823

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished via the Court's CM/ECF noticing system to Patrick W. Maraist, Esq., pmaraist@maraistlawfirm.com and via U.S. mail to Norman L. Schroeder, Esq., 6801 Lake Worth Road, Lake Worth, FL 33467 this 23rd day of August, 2010.

> /s/ Robert F. Reynolds___
> ROBERT F. REYNOLDS